IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

JOE OSTERHOUT,

Plaintiff,

v.

TCF FINANCIAL CORPORATION, GARY TORGOW,
THOMAS C. SHAFER, VANCE K. OPPERMAN,
DAVID T. PROVOST, PETER BELL,
KAREN L. GRANDSTRAND, RICHARD H. KING,
RONALD A. KLEIN, BARBARA J. MAHONE,
BARBARA L. MCQUADE, ROGER J. SIT, JULIE H.
SULLIVAN, JEFFREY L. TATE, ARTHUR A. WEISS,
FRANKLIN C. WHEATLAKE, and THERESA M. H. WISE,

    Defendants.

## COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS AND JURY DEMAND

Plaintiff Joe Osterhout ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

### NATURE OF THE ACTION

1.     This is an action against TCF Financial Corporation ("TCF" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed merger (the "Proposed Transaction") of TCF and Huntington

1

Bancshares Incorporated ("Huntington"). In connection with the Proposed Transaction, TCF common stock holders will receive 3.0028 shares of Huntington common stock for each share of TCF common stock that they own.

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and TCF conducts business in this District.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of TCF common stock.

7. Defendant TCF operates as the financial holding company for TCF National Bank which provides various financial products and services in the United States and Canada. TCF bank has branches in Colorado. As of December 31, 2019, the Company had 520 branches,

including 396 traditional branches, 121 supermarket branches, and three campus branches located in Michigan, Illinois, Minnesota, Colorado, Ohio, Wisconsin, Arizona, and South Dakota. The Company is incorporated in Michigan. The Company's common stock trades on the Nasdaq Stock Market under the ticker symbol, "TCF."

8. Defendant Gary Torgow ("Torgow") is Executive Chairman of the Board of the Company.

9. Defendant Thomas C. Shafer ("Shafer") is Vice Chairman of the Board of the Company.

10. Defendant Vance K. Opperman ("Opperman") is a director of the Company.

11. Defendant David T. Provost ("Provost") is Chief Executive Officer ("CEO") and a director of the Company.

12. Defendant Peter Bell ("Bell") is a director of the Company.

13. Defendant Karen L. Grandstrand ("Grandstrand") is a director of the Company.

14. Defendant Richard H. King ("King") is a director of the Company.

15. Defendant Ronald A. Klein ("Klein") is a director of the Company.

16. Defendant Barbara J. Mahone ("Mahone") is a director of the Company.

17. Defendant Barbara L. McQuade ("McQuade") is a director of the Company.

18. Defendant Roger J. Sit ("Sit") is a director of the Company.

19. Defendant Julie H. Sullivan ("Sullivan") is a director of the Company.

20. Defendant Jeffry L. Tate ("Tate") is a director of the Company.

21. Defendant Arthur A. Weiss ("Weiss") is a director of the Company.

22. Defendant Franklin C. Wheatlake ("Wheatlake") is a director of the Company.

23. Defendant Theresa M. H. Wise ("Wise") is a director of the Company.

24. Defendants Torgow, Shafer, Opperman, Provost, Bell, Grandstrand, King, Klein, Mahone, McQuade, Sit, Sullivan, Tate, Weiss, Wheatlake, and Wise are collectively referred to herein as the "Individual Defendants."

25. Defendants TCF and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A. **The Proposed Transaction**

26. On December 13, 2020, TCF and Huntington announced the signing of a definitive agreement under which the companies would combine in an all-stock merger. Under the terms of the agreement, TCF will merge into Huntington, and the combined holding company and bank will operate under the Huntington name and brand following the closing of the transaction. Upon closing, Stephen D. Steinour will remain the chairman, president, and CEO of the holding company and CEO and president of the bank. Defendant Torgow will serve as chairman of the bank's board of directors. The press release states, in pertinent part:

> **Huntington Bancshares And TCF Financial Corporation Announce Merger To Create Top 10 U.S. Regional Bank**
>
> NEWS PROVIDED BY
> **Huntington Bancshares Inc.**
> Dec 13, 2020, 21:56 ET
>
> COLUMBUS, Ohio and DETROIT, Dec. 13, 2020 /PRNewswire/ -- Huntington Bancshares Incorporated ("Huntington") (Nasdaq: HBAN; www.huntington.com), the parent company of The Huntington National Bank, and TCF Financial Corporation ("TCF") (Nasdaq: TCF; www.tcfbank.com), the parent company of TCF National Bank, today announced the signing of a definitive agreement under which the companies will combine in an all-stock merger with a total market value of approximately $22 billion to create a top 10 U.S. regional bank with dual headquarters in Detroit, Michigan and Columbus, Ohio.
>
> \*   \*   \*

4

Under the terms of the agreement, which was unanimously approved by the boards of directors of both companies, TCF will merge into Huntington, and the combined holding company and bank will operate under the Huntington name and brand following the closing of the transaction. Upon closing, Stephen D. Steinour will remain the chairman, president, and CEO of the holding company and CEO and president of the bank. Gary Torgow will serve as chairman of the bank's board of directors.

*   *   *

### Board of Directors

At closing, five current TCF Directors will be added to the Board of Directors of the holding company.  David L. Porteous will serve as Lead Director of the holding company's Board of Directors and the bank's Board of Directors.

### Timing and Approvals

The merger is expected to close in the second quarter of 2021, subject to satisfaction of customary closing conditions, including receipt of customary regulatory approvals and approval by the shareholders of each company.

### Advisors

Goldman Sachs & Co. LLC is serving as financial advisor to Huntington.  Wachtell, Lipton, Rosen & Katz is serving as legal advisor to Huntington.

Keefe, Bruyette & Woods, *a Stifel Company*, is serving as financial advisor to TCF.  Simpson Thacher & Bartlett LLP is serving as legal advisor to TCF.

*   *   *

### About Huntington

Huntington Bancshares Incorporated is a regional bank holding company headquartered in Columbus, Ohio, with $120 billion of assets and a network of 839 full-service branches, including 11 Private Client Group offices, and 1,330 ATMs across seven Midwestern states.  Founded in 1866, The Huntington National Bank and its affiliates provide consumer, small business, commercial, treasury management, wealth management, brokerage, trust, and insurance services. Huntington also provides vehicle finance, equipment finance, national settlement, and capital market services that extend beyond its core states.  Visit huntington.com for more information.

### About TCF Financial Corporation

> TCF Financial Corporation (Nasdaq: TCF) is a Detroit, Michigan-based financial holding company with $48 billion in total assets at Sept. 30, 2020 and a top 10 deposit market share in the Midwest. TCF's primary banking subsidiary, TCF National Bank, is a premier Midwest bank offering consumer and commercial banking, trust and wealth management, and specialty leasing and lending products and services to consumers, small businesses and commercial clients. TCF has approximately 475 branches primarily located in Michigan, Illinois and Minnesota with additional locations in Colorado, Ohio, South Dakota and Wisconsin. TCF also conducts business across all 50 states and Canada through its specialty lending and leasing businesses. To learn more about TCF, visit tcfbank.com.

27. On January 28, 2021, Defendants caused to be filed with the SEC a Form S-4 Registration Statement (the "Registration Statement") under the Securities Act of 1933 in connection with the Proposed Transaction.

**B. The Registration Statement Contains Materially False and Misleading Statements and Omissions**

28. The Registration Statement, which recommends that TCF shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) TCF's and Huntington's financial projections; (ii) the financial analyses performed by TCF's financial advisor, Keefe, Bruyette & Woods, Inc. ("KBW"), in connection with its fairness opinion; (iii) potential conflicts of interest involving KBW; and (iv) potential conflicts of interest involving Company insiders.

29. The omission of the material information (referenced below) renders the following sections of the Registration Statement false and misleading, among others: (i) Background of the Merger; (ii) TCF's Reasons for the Merger; Recommendation of TCF's Board of Directors; (iii) Opinion of TCF's Financial Advisor; and (iv) Certain Unaudited Prospective Financial Information.

30. Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote on the Proposed Transaction, TCF shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all

6

material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning TCF's and Huntington's Financial Projections

31.     The Registration Statement omits material information concerning TCF's and Huntington's financial projections.

32.     The Registration Statement fails to disclose: (1) the estimated excess cash flows that TCF could generate over the period from June 30, 2021 through December 31, 2026 as a standalone company, and all underlying line items; (2) the estimated excess cash flows that Huntington could generate over the period from June 30, 2021 through December 31, 2026 as a standalone company, and all underlying line items; and (3) the estimated excess cash flows that the pro forma combined entity could generate over the period from June 30, 2021 through December 31, 2026, and all underlying line items. This information is material as these cash flows were utilized by KBW in connection with its "*Huntington Discounted Cash Flow Analysis*," "*TCF Discounted Cash Flow Analysis*," and "*Pro Forma Combined Discounted Cash Flow Analysis*."

33.     Further, with respect to the "*TCF Prospective Financial Information*" and "*Huntington Prospective Financial Information*," the Registration Statement fails to disclose: (1) TCF's basis for providing KBW with estimated long-term annual growth rates of 5% for TCF's net income and for TCF's risk weighted assets, an estimated pre-tax cost of cash of 1.05%, and an estimated marginal tax rate of 18.0%; and (2) Huntington's basis for providing KBW with estimated long-term annual growth rates of 3% for Huntington's net income and for Huntington's risk weighted assets, an estimated pre-tax cost of cash of 1.05%, and an estimated marginal tax rate of 18.0%.

34.     The disclosure of the aforementioned information is material because it would

provide the Company's shareholders with a basis to project the future financial performances of the Company and combined company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

35. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning KBW's Analyses

36. In connection with the Proposed Transaction, the Registration Statement omits material information concerning analyses performed by KBW.

37. With respect to KBW's "*TCF Selected Companies Analysis*," "*Huntington Selected Companies Analysis*," and "*Selected Transactions Analysis*" the Registration Statement fails to disclose the individual multiples and financial metrics of the companies and transactions KBW observed in its analyses.

38. The Registration Statement fails to disclose the following concerning KBW's "*Financial Impact Analysis*": (1) closing balance sheet estimates as of June 30, 2021 for Huntington and TCF; (2) the pro forma assumptions; and (3) the extent to which the merger could be accretive to Huntington's estimated 2022 EPS and could be dilutive to Huntington's estimated tangible book value per share at closing as of June 30, 2021.

39. The Registration Statement fails to disclose the following concerning KBW's "*Huntington Discounted Cash Flow Analysis*": (1) the individual inputs and assumptions

8

underlying the (i) discount rates ranging from 9.0% to 12.0%, and (ii) range of 9.5x to 12.5x to Huntington's estimated 2026 earnings; (2) the estimated excess cash flows that Huntington could generate over the period from June 30, 2021 through December 31, 2026 as a standalone company, and all underlying line items; (3) Huntington's implied terminal value; and (4) the basis for KBW's assumption that Huntington would maintain a common equity tier 1 ratio of 9.00% and would retain sufficient earnings to maintain that level.

40. The Registration Statement fails to disclose the following concerning KBW's "*TCF Discounted Cash Flow Analysis*": (1) the individual inputs and assumptions underlying the (i) discount rates ranging from 10.0% to 13.0%, and (ii) range of 9.0x to 13.0x to TCF's estimated 2026 earnings; (2) the estimated excess cash flows that TCF could generate over the period from June 30, 2021 through December 31, 2026 as a standalone company, and all underlying line items; (3) TCF's implied terminal value; and (4) the basis for KBW's assumption that TCF would maintain a common equity tier 1 ratio of 9.00% and would retain sufficient earnings to maintain that level.

41. The Registration Statement fails to disclose the following concerning KBW's "*Pro Forma Combined Discounted Cash Flow Analysis*": (1) the individual inputs and assumptions underlying the (i) discount rates ranging from 9.0% to 12.0%, and (ii) range of 9.5x to 12.5x the pro forma combined entity's estimated 2026 earnings; (2) the estimated excess cash flows that the pro forma combined entity could generate over the period from June 30, 2021 through December 31, 2026, and all underlying line items; (3) the pro forma combined entity's implied terminal value; and (4) the basis for KBW's assumption that the pro forma combined entity would maintain a common equity tier 1 ratio of 9.00% and would retain sufficient earnings to maintain that level.

42. The valuation methods, underlying assumptions, and key inputs used by KBW in rendering its purported fairness opinion must be fairly disclosed to TCF shareholders. The description of KBW's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, TCF shareholders are unable to fully understand KBW's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3. Material Omissions Concerning Potential Conflicts of Interest Involving KBW

43. The Registration Statement omits material information concerning potential conflicts of interest involving KBW.

44. The Registration Statement provides that:

In addition to the present engagement, in the two years preceding the date of its opinion, KBW provided investment banking or financial advisory services to TCF and received compensation for such services. KBW acted as financial advisor to TCF (then known as Chemical Financial Corporation) in connection with its merger of equals with legacy TCF, which was completed in August 2019. In addition, KBW acted as co-manager for TCF National Bank's May 2020 offering of fixed-to-floating rate subordinated notes. In connection with the foregoing acquisition and subordinated notes offering, KBW received fees of approximately $26 million in the aggregate from TCF.

45. The Registration Statement, however, fails to adequately disclose whether the approximately $26 million in fees KBW received from TCF in connection with the foregoing acquisition and subordinated notes offering encompasses ***all*** the services KBW provided and ***all*** the fees KBW received from TCF within the past two years of the date of its fairness opinion. In sum, the Registration Statement must disclose the timing and nature of all services KBW provided TCF and/or its affiliates, including the amount of compensation KBW received for providing each

service, within the past two years of the date of its fairness opinion.

46. Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

47. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 4. Material Omissions Concerning Company Insiders' Potential Conflicts of Interest

48. The Registration Statement omits material information concerning potential conflicts of interest involving Company insiders.

49. The Registration Statement provides the following concerning the composition of the board of the combined company following consummation of the Proposed Transaction:

> ***Membership of the Board of Directors of the Huntington and The Huntington National Bank***
>
> The Huntington board of directors following the merger will consist of eighteen (18) directors, thirteen (13) of whom will be the current members of the Huntington board of directors and five (5) of whom will be current members of the TCF board of directors.
>
> \*      \*      \*
>
> In addition, as of the effective time of the bank merger, Mr. Torgow will be appointed as Chairman of the board of directors of The Huntington National Bank.

50. Further, the Registration Statement provides that Defendants Provost and Torgow entered into letter agreements with Huntington "with respect to the terms of [their] service as [] advisor[s] to Huntington after the consummation of the merger."

51. The Registration Statement, however, fails to disclose the details of all

11

employment-related and compensation-related discussions and negotiations concerning the Company's officers and directors, including the parties to such communications, when they occurred, and the specific content discussed/communicated.

52. The Registration Statement further fails to adequately disclose the extent to which Huntington's proposals or indications of interest mentioned management retention or equity participation in the combined company during the sales process.

53. Any communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board. Such information may illuminate the motivations that would prevent fiduciaries from acting solely in the best interests of the Company's shareholders.

54. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

55. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

56. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

57. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose

such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Registration Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Registration Statement.

58.  The false and misleading statements and omissions in the Registration Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

59.  By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

60.  Because of the false and misleading statements and omissions in the Registration Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

61.  Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

62.  The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Registration Statement.

13

63. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Registration Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

64. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Registration Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Registration Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Registration Statement.

65. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

66. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

67. As set forth above, the Individual Defendants had the ability to exercise control

14

over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: February 9, 2021                                       Respectfully submitted,

                                                                      **HALPER SADEH LLP**

                                                                      /s/ Daniel Sadeh
                                                                      Daniel Sadeh, Esq.

Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
       zhalper@halpersadeh.com

*Counsel for Plaintiff*